F I L E D
Clerk
District Court
FEB 06 2014
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SAIPAN AIR, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONALD A. STUKES, JEFFRY CONRY, and BORIS VAN LIER, <br><br> Defendants. | CASE NO. 1:12-CV-00015 <br><br> **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

### I.    INTRODUCTION

Defendants Donald A. Stukes, Jeffry Conry, and Boris Van Lier (collectively "Defendants") assert that Plaintiff Saipan Air, Inc. ("Saipan Air") is enjoined from continuing this lawsuit against them by force of the confirmed Chapter 11 reorganization plan ("the Plan") of Swift Air, Inc. ("Swift Air"). Their Motion for Permanent Injunction (ECF No. 44) has been converted, with the parties' consent, into a motion for summary judgment. *See* Order, Dec. 18, 2013 (ECF No. 59.) The matter has been fully briefed. Without objection, all exhibits that the parties submitted in support their respective positions have been admitted for purposes of the motion. The matter was heard on December 19, 2013, and taken under advisement. Having considered all the papers and the oral arguments of counsel, the Court denies Defendants' motion for summary judgment.

1

## II. BACKGROUND

The essential facts bearing on the motion are undisputed. At all times relevant, Defendants were employees, officers, or advisers of Swift Air, an Arizona corporation. Defendant Conry was Chief Executive Officer. (Conry Declaration, ECF 45-2, ¶ 35.) Defendant Van Lier was Director of Operations. (*Id.*) Defendant Stukes was Swift Air's Chief Restructuring Officer and was also an employee of ASI Advisors, LLC. (Stukes Decl., ECF No. 9, ¶ 13.)

In early April 2012, Saipan Air and Swift Air entered into an agreement ("the Agreement") for Swift Air to provide Saipan Air with aircraft, crew, maintenance, and insurance. Over the next two months, Saipan Air wired a total of $1.267 million to Swift Air and provided a $524,000 letter of credit to secure delivery of the aircraft by July 1. On June 21, Defendant Van Lier, acting on behalf of Swift Air, sent a letter to Saipan Air purporting to terminate the Agreement. (Answer to FAC ¶ 34.) Less than a week later, on June 27, Swift Air filed for bankruptcy in the District of Arizona under chapter 11 of the Bankruptcy Code.

In response, Saipan Air took action on two fronts. In Arizona, it participated actively in the bankruptcy case. In the initial filings, Saipan Air was listed as Swift Air's second-largest unsecured creditor. (*See* List of Creditors Holding 20 Largest Unsecured Claims, *In re Swift Air,* 2:12-bk-14362-DPC (Bankr. D. Ariz. June 27, 2012), Dkt. Entry 2.) Swift Air's chief operating officer, Adam Ferguson, chaired the creditors' committee. On July 8, Ferguson swore out a declaration in support of its $1.276 million claim. (*See* Declaration of Adam Ferguson ("Ferguson Declaration"), ECF No. 44-3.) Ferguson alleged that a series of broken promises, misrepresentations, and outright lies by Conry, Van Lier, and other agents of Swift Air induced Saipan Air to enter into the Agreement. (*See* Ferguson Decl. ¶¶ 5–12.)

2

Around the same time, Saipan Air brought an action in this District against the individual Defendants for fraud, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"). The complaint, filed July 12, 2012, alleged that Defendants fraudulently induced Saipan Air to transfer money and other assets to Swift Air. For the most part, the facts alleged in the Ferguson Declaration in support of Saipan Air's claim against Swift Air in the bankruptcy case also serve as the basis for the complaint against the individual Defendants in the civil action.

On August 21, 2013, in the bankruptcy case, Swift Air filed a Third Amended Plan of Reorganization ("the Plan"). (*In re: Swift Air,* Dkt. Entry 620-1; also ECF No. 44-5.) Section 9.7 of the Plan enjoins all persons asserting any claims "against any of the released parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in the Debtor" from "[c]ommencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claims . . ." (*Id.*) On October 1, 2013, the bankruptcy court entered an order confirming the Plan. (*In re: Swift Air,* Dkt. Entry 662; also ECF No. 44-4.) Saipan Air did not appeal the confirmation order, and the time for filing notice of appeal, pursuant to Rule 8002 of the Bankruptcy Code, expired on October 15.

### III.   LEGAL STANDARD

A court must grant summary judgment if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

1  for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or
2  "showing that the materials cited do not establish the absence or presence of a genuine dispute,
3  or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.
4  56(c).
5      An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-
6  moving party on the evidence presented; a mere "scintilla of evidence" is not sufficient. *Rivera v.*
7  *Philip Morris,* Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*,
8  477 U.S. 242, 252 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.*
9      The court views the evidence in the light most favorable to the non-moving party and
10 draws "all justifiable inferences" in that party's favor. *Miller v. Glenn Miller Prods., Inc.,* 454
11 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999)). The
12 moving party bears the initial burden of establishing the absence of a genuine issue of material
13 fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). When the moving party has met its
14 burden, the non-moving party must present "specific facts showing that there is a genuine issue
15 for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting
16 Fed. R. Civ. P. 56(e)). Conclusory allegations, unsupported by factual material, are insufficient
17 to defeat a motion for summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)
18 (quoting *Angel v. Seattle-First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981)).
19     **IV.    ANALYSIS**
20     The outcome of this motion turns on whether the individual Defendants are "released
21 parties" within the meaning of § 9.7 of the Plan. Section 9.7 enjoins Swift Air's creditors from
22 continuing to pursue "against any of the released parties" any action related to a claim against
23
24                                        4

Swift Air. Indisputably, Saipan Air was an unsecured creditor of Swift Air, and its claims against Defendants arise out of and are related to its claims against Swift Air. If Defendants are released parties, they are shielded from this action by § 9.7's supplemental injunction.

Even if the injunction applies to this action, however, this Court would not necessarily have the authority to enforce it. Typically, enforcement authority lies with the court that issued the injunction – in this instance, the Bankruptcy Court of the District of Arizona. *See Baker v. GMC,* 522 U.S. 222, 236 (U.S. 1998) ("Sanctions for violations of an injunction . . . are generally administered by the court that issued the injunction."); *cf. Ramirez-Juarez v. INS,* 633 F.2d 174, 175 n.2 (9th Cir. 1980) (declining to address whether circuit court had jurisdiction to enforce another court's injunction upon review of deportation order). Indeed, the Arizona court expressly retained jurisdiction over the chapter 11 case after the Plan's effective date. *See* Plan (ECF No. 44-5), art. 10.1.

Nevertheless, the injunction effectively ends this lawsuit if it shows that Saipan Air's claims against the individual Defendants have already been settled in the Arizona bankruptcy case. This result comes about through application of the doctrine of claim preclusion, or res judicata. Claims are precluded when there has been a final judgment on the merits by a court of competent jurisdiction involving the same parties and the same claims. *See Rein v. Driscoll,* 270 F.3d 895, 898–99 (9th Cir. 2001). A confirmed reorganization plan "operates as a final judgment with res judicata effect." *Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.),* 139 F.3d 702, 704 (9th Cir. 1998). Where a creditor has released all claims against a nondebtor under the terms of a confirmed reorganization plan, "res judicata precludes collateral attack" through a separate lawsuit. *Trulis v. Barton,* 107 F.3d 685, 691 (9th

5

1  Cir. 1995). However, unless the applicable provisions of the confirmed plan are clear and
2  unambiguous, "the principles of res judicata do not bar [the claim]." *Miller v. United States,* 363
3  F.3d 999, 1004 (9th Cir. 2004).
4      To determine whether § 9.7 of the Plan clearly and unambiguously enjoins related claims
5  against the individual Defendants, the rules of contract interpretation must be applied. *Id.; also*
6  *Hillis Motors v. Hawaii Auto. Dealers' Ass'n (In re Hillis Motors),* 997 F.2d 581, 588 (9th Cir.
7  1993) (superseded by statute on other grounds) ("A reorganization plan . . . should be construed
8  basically as a contract."). "Although contract interpretation involves mixed questions of law and
9  fact, the application of contractual principles is a matter of law." *Circle K Corp. v. Collins (In re*
10 *Circle K Corp.),* 98 F.3d 484, 486 (9th Cir. 1996). The law of the state in which the plan was
11 confirmed governs the interpretation of plan provisions. *In re Hillis Motors,* 997 F.2d at 588;
12 *C.F. Brookside, Ltd. v. Skyview Memorial Lawn Cemetery (In re Affordable Hous. Dev. Corp.),*
13 175 B.R. 324, 329 (B.A.P. 9th Cir. 1994). Therefore, Arizona law governs interpretation of terms
14 of the Swift Air Plan.
15     Under Arizona law, a contract is ambiguous "only if the language can reasonably be
16 construed in more than one sense and the construction cannot be determined within the four
17 corners of the document." *J.D. Land Co. v. Killian,* 762 P.2d 124, 126 (Ariz. App. 1988) (quoted
18 in *In re Bataa/Kierland LLC,* 496 B.R. 183, 192 (D. Ariz. 2013)). In interpreting a contract, a
19 court "attempt[s] to reconcile and give meaning to all its terms." *Weatherguard Roofing Co., Inc.*
20 *v. D.R. Ward Constr. Co., Inc.,* 152 P.3d 1227, 1233 (Ariz. App. 2007).
21     Defendants assert that under Arizona law, § 9.7 of the Plan is not ambiguous. Reply at 5.
22 According to them, the term "released parties" would be meaningless if it does not include the
23
24

1   officers, employees, and advisers of Swift Air. *Id.* They concede that the Plan does not define

2   "released parties" but maintain this fact alone does not necessarily make the term ambiguous.

3   For this proposition, they cite to an unpublished and therefore nonprecedential Ninth Circuit

4   memorandum, *Federated Rural Elec. Ins. Corp. v. Certain Underwriters at Lloyds,* 293 Fed.

5   Appx. 539, 540 (9th Cir. 2008), which construes Washington, not Arizona, law. No matter: the

6   proposition is uncontroversial. When faced with an undefined term, courts generally assign the

7   term its plain and ordinary meaning. *Id.* In Arizona, to establish the plain and ordinary meaning

8   of undefined terms, courts consult widely used dictionaries. *See Strojnik v. General Ins. Co. of*

9   *Am.,* 36 P.3d 1200, 1205 (Ariz. App. 2001).

10          Defendants' argument is not persuasive. There really is no dispute between the litigants

11  about what "released parties" *means:* it means parties who are released from liability – in this

12  case, liability on creditors' claims related to the Swift Air bankruptcy. The problem is identifying

13  who the released parties *are*. No dictionary will help settle that question. What is needed is

14  language somewhere within the four corners of the Plan either expressly naming each released

15  party or clearly delineating the classes of persons and entities who are released. This Plan has

16  none.

17          Under Ninth Circuit precedent, the released parties must be clearly identifiable in order

18  for a provision releasing claims to have preclusive effect. In *Trulis v. Barton,* a country club filed

19  for bankruptcy to restructure its members' rights. *Trulis,* 107 F.3d at 688. Shortly thereafter,

20  some of the members sued the club's founders, directors, and attorneys for fraud and RICO

21  violations. *Id.* The club's reorganization plan included a release of certain third-party claims. *Id.*

22  at 689. The bankruptcy court's order confirming the plan plainly identified the released parties as

23

24                                              7

"the Developer and the Developer Affiliates." *Trulis,* 107 F.3d at 689. Likewise, the class of releasing parties –"Series B Charter Gold Members" who opted into the plan – was clearly named. *Id.* After the plan was confirmed, some of the class members persisted in prosecuting the civil suit, arguing that the plan's release term was unconscionable, and unenforceable under state law. *Id.* at 690. The Ninth Circuit concluded that plaintiffs' claims were barred by res judicata principles. *Id.* at 691. The court found that a party who is clearly and expressly subject to a term of a confirmed plan has only one means to challenge that term – through a direct appeal:

> Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect. . . . Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter. . . . The release provisions and the bankruptcy court order *expressly* apply to the same parties and claims as the present suit. The bankruptcy court order confirming the Joint Plan *clearly* stated that members of each class who elected to become members of the new club, which each plaintiff in this case did, release all claims against the [defendants].

*Id.* (emphasis added).

*Trulis* counsels against finding that Swift Air's claims against the individual Defendants are precluded. Unlike the confirmed reorganization plan in *Trulis,* which clearly identified the plaintiffs and defendants as releasing and released parties, the Swift Air Plan and confirming order do not expressly say to whom the third-party release terms apply. The supplemental injunction in Section 9.7 of the Swift Air Plan is cast in the broadest possible language. It enjoins "all Persons . . . who currently hold or assert, have held or asserted, or may hold or assert, any Claims or any other obligations, suits, judgments [etc.] . . . against any of the released parties based upon, attributable to, arising out of or relating to any Claim against . . . the Debtor, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world . . .

8

from taking any action against any of the released parties" to recover on such claims. (ECF No. 44-5.) Capitalized terms – Person, Claim, Debtor – are expressly defined in § 1.1 of the Plan. The uncapitalized term "released parties" is not.

Defendants urge that "[t]he most reasonable conclusion is that the term 'released parties' refers at a minimum to those who acted on behalf of Swift, that is, its members, directors, officers, managers, employees, advisors, attorneys, or agents." (Memo., ECF No. 44-1, at 9.) The question is not, however, what the most reasonable meaning of the term would be, but whether the meaning is clear. Without guideposts within the Plan as to who is and is not within the class of released parties, the meaning cannot be discerned with clarity.

Defendants assert that they "must be 'released parties' for that term to have any meaning." (Reply at 6.) Certainly, express definitions of "released parties" in corporate reorganization plans typically include directors, officers, and other agents of the debtor entity. But also it is not uncommon for certain classes of affiliated persons to be expressly *excluded*. For example, one recent Delaware reorganization plan defined "Released Parties" to mean "the respective present and former officers and directors of the Debtors, excluding, to the extent applicable, any Person who is a defendant in any litigation asserting Third Party Causes of Action, except as expressly provided as part of an agreement to settle all or any portion of such claims . . ." *In re Flintkote Co.,* 2012 Bankr. LEXIS 6006 n.7 (Dec. 21, 2012) (confirming order, quoting plan definition). An express release of claims against directors, officers, and agents might not reach conduct that constitutes gross negligence or resulted in personal gain detrimental to the bankruptcy estate. *See, e.g., In re Northeast Biofuels, LP*, 2011 Bankr. LEXIS 1856 n.4 (Bankr. N.D.N.Y., Feb. 11, 2011). Because the Swift Air Plan and confirming order do not

identify the released parties, releasing parties, and released claims with any specificity whatsoever, it cannot be said with confidence that Saipan Air released its fraud and RICO claims against these individual Defendants. In this sense, § 9.7 of the Plan is ambiguous and, therefore, cannot be the basis to bar Saipan Air's claims. *See Miller,* 363 F.3d at 1004.

Arizona contract law supports this outcome. Generally, a release of liability is strictly construed against the party seeking to enforce it. *See Bothell v. Two Point Acres,* 965 P.2d 47, 51 (Ariz. App. 1998) (prospective exculpatory covenant); *Sirek v. Fairfield Snowbowl,* 800 P.2d 1291, 1294–95 (Ariz. App. 1990) (contract provisions regarding negligence liability); *Grubb & Ellis Mgmt. Svcs., Inc., v. 407417 B.C., L.L.C.,* 138 P.3d 1210 (Ariz. App. 2006) (indemnity provisions). Terms attempting to absolve a party of liability "should . . . be clear and unequivocal," and "the language should alert the party agreeing to such a provision that it is giving up a very substantial right." *Sirek,* 800 P.2d at 1295. The language of § 9.7 is far short of clear enough to alert Saipan Air that by assenting to the Plan it was agreeing to abandon this lawsuit.

## V.   CONCLUSION

For the foregoing reasons, res judicata principles do not bar Saipan Air's claims against the individual Defendants. The Motion for Permanent Injunction (ECF No. 44), construed as a motion for summary judgment, is denied.

SO ORDERED this 6th day of February, 2014.

RAMONA V. MANGLONA
Chief Judge